UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO. 11-40506 |
| SCOTTO RESTAURANT GROUP, LLC ) | |
| ) | CHAPTER 11 |

## DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO USE CASH COLLATERAL, GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDERS, AND SETTING FINAL HEARING, MOTION FOR ORDER ALLOWING SHORTENED NOTICE

Scotto Restaurant Group, LLC ("Debtor") hereby moves this Court for entry of an order authorizing the Debtor to use cash collateral, granting adequate protection to pre-petition secured lenders, and setting final hearing pursuant to sections 105(a) and 363(c)(2)(B) of Title 11 of the United States Code (the "Motion"). In support of this Motion, the Debtor alleges:

### JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C.§§ 157 and 1334. Venue of this case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code.

2. No previous request for the relief requested herein has been made to this Court or to any other court.

### BACKGROUND

3. On September 27, 2011 (the "Petition Date"), the court entered an Order for Relief following the filing of an involuntary petition. The Debtor continues in possession of its assets and in the management of its business pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee, examiner or committee has been appointed in the Chapter 11 case.

4. Notice of the Interim Hearing and the relief requested in the Motion will be given by facsimile to known creditors having secured claims, and counsel therefor if known, the Office of the United States Bankruptcy Administrator, and the Debtor's twenty largest creditors. Such notice constitutes good and sufficient notice of the Motion and the Interim Hearing under the circumstances in accordance with Bankruptcy Rules 4001(b), 4001(c), the Local Bankruptcy Rules and section 102(1) of the Bankruptcy Code, as required by Bankruptcy Code sections 363(c), 363(e), 364(c) and 364(d) in light of the emergency nature of the relief requested in the Motion. The Debtor requests entry of an Order providing that the hearing on this Motion be held on September 29, 2011 at 1:00 p.m.

5. In June 2003 Scotto Holdings LLC ("Holdings") opened its first store in Charlotte,

N.C. as a franchisee of the Firehouse Restaurant Group, Inc. ("Firehouse"). Firehouse is a US-based, fast casual restaurant chain that specializes in hot submarine sandwiches. As of September, 2011, there are approximately 390 Firehouse Subs locations. Holdings merged into the Debtor on June 1, 2009. Chris M. Scotto was the CEO and majority member of the Debtor, his son Justin Scotto was in charge of operations of the stores. The Debtor currently operates seven Firehouse Subs franchise locations and has approximately 100 employees.

6. Much of the Debtor's growth was funded through personal unsecured high interest (typically 8% to 12%) loans obtained by Chris M. Scotto from clients he served as a financial advisor. On occasion, Chris M. Scotto would retain a large portion of the loans as "fee" (i.e. $50,000.0 on a $150,000.00 loan), but the Debtor would make payments on the entire loan balance. The Debtor also believes that the proceeds of one or more loans intended for the Debtor's use were diverted to the personal use of Chris M. Scotto. In early 2009, Chris M. Scotto decided to retire as a financial advisor and run the Debtor on a full time basis. An inordinate amount of the Debtor's resources were expended paying the salary and expenses of Chris M. Scotto, at one time $8,000.00 per month salary plus benefits, use of a corporate credit card, life insurance and travel expenses.

7. In 2010, the Debtor's cash flow was such that it was not able to make payments to its lenders and pay its operating expenses, including expenses incurred by or for Chris M. Scotto. In late 2010, Chris M. Scotto separated from the Debtor and Justin Scotto became Managing Member. In October, 2010, Chris M. Scotto filed a Chapter 7 bankruptcy case. Throughout 2010 and 2011, the Debtor unsuccessfully attempted to reach agreements with its creditors concerning the repayment of the unsecured loans. On August 11, 2011, three of the unsecured creditors filed an involuntary Chapter 11 petition against the Debtor. The Debtor intends to use the Chapter 11 proceeding to review all financial transactions related to Chris M. Scotto, to attempt the recovery of any fraudulent or preferential transfers of the Debtor's assets and to reorganize its financial affairs so that it may remain an operating entity. The Debtor has relatively little secured debt, but in excess of $2,300,000.00 in unsecured non-priority debt.

8. To ensure the continued viability of its enterprise, the Debtor has an immediate and urgent need to use funds to allow it to pay various operating expenses including payroll, payroll taxes, utilities, insurance, accounting and legal fees, ejectment fees, and payments to vendors.

9. The Debtor has determined that projected post-petition cash flows, plus cash reserves, are sufficient to adequately finance the Debtor's post-petition activities. A copy of the Debtor's projected bi-weekly expenses (the "Budget") is attached hereto as Exhibit "A".

10. The Debtor's business is cash and carry. The Debtor does not have accounts receivable. 11 U.S.C. Section 552(a) provides in part that "...property acquired after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case". This case was commenced with the filing of an involuntary petition on August 11, 2011. The Debtor was authorized by 11 U.S.C. Section 303(f) to use, acquire and dispose of property without court approval.

11. To the extent the funds in the Debtor's accounts were earned and received subsequent to August 11, 2011, the Debtor believes that such funds are not the cash collateral of the holders of claims secured by "accounts". Accordingly, the Debtor would not need the Court's authority to use cash collateral. Nothing in this Motion should be construed as an admission that any

of its assets constitutes cash collateral.

12. To the extent any of the Debtor's funds are found to be cash collateral, this Motion seeks the authority to use such cash collateral in making payments on items in the Budget and payments authorized pursuant to the Debtor's Motion for Entry of an Order Authorizing Debtors to Pay, in the Ordinary Course of Business, Certain Undisputed Claims of Critical Vendors and Essential Service Providers.

13. The Debtor requests authority to use funds which may be cash collateral subject to the Court entering interim and final orders providing any creditors with satisfactory adequate protection.

14. The Debtor requires the use of funds which may be cash collateral to fund, among other things, its ongoing working capital requirements. If the use of cash collateral is not approved, the Debtor will suffer immediate and irreparable harm.

15. The Debtor does not believe it is able to obtain post-petition unsecured credit, and it has no way in which to pay ongoing administrative expenses under Bankruptcy Code section 503(b)(1) except with the use of funds which may be cash collateral. The relief requested in the Motion is necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of its assets. It is in the best interests of the Debtor's estate that the use of cash collateral be authorized. The Debtor's estate will be immediately and irreparably harmed if this Interim Order is not entered. Good cause has, therefore, been shown for entry of this Interim Order.

16. A creditor with a properly perfected security interest in the Debtor's accounts may be entitled, pursuant to Bankruptcy Code sections 361, 363(c) and 363(e), to the adequate protection of its interest in the Pre-petition Collateral (to the extent of the Pre-petition Secured Indebtedness) from any diminution in value of the Pre-petition Collateral resulting from the Debtor's use of Cash Collateral and the imposition of the automatic stay. The Debtor is willing and able to provide adequate protection to such creditors.

## Proposed adequate protection and decretal provisions

17. The Motion is granted on an interim basis and on the terms set forth in the Order. The Interim Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014.

18. Subject to the terms of the Interim Order, the Debtor will be authorized to use Cash Collateral in which CommunityOne Bank has an interest, in accordance with the terms, conditions, and limitations set forth in the Interim Order, without further approval by the Court. Any dispute in connection with the use of Cash Collateral and the Interim Order shall be heard by the Court.

19. The Debtor will be authorized to use Cash Collateral for items shown on the budget attached hereto as Exhibit "A".

20. The Post-petition Liens shall not at any time be (i) made subject or subordinated to, or made pari passu with any other lien, security interest or claim existing as of the Petition Date, or

created under Bankruptcy Code sections 363 or 364(d) or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under Bankruptcy Code section 551.

21. The Post-petition Liens will be deemed fully perfected liens and security interests, effective and perfected upon the date of the Interim Order (to the extent of any lender's pre-petition perfection) without the necessity of execution by the Debtor of mortgages, security agreements, pledge agreements, financing agreements, financing statements and other agreements or instruments, such that no additional steps need be taken by any lender to perfect such interests. However, the Debtor is authorized to make, execute and deliver such instruments (in each case without representation or warranty of any kind) to enable a lender to further perfect, preserve, and enforce the Post-petition Liens.

22. The Post-petition Liens will continue in this and in any superseding case or cases under the Bankruptcy Code, and such liens and security interests shall maintain their first priority as provided in this Interim Order until all the Debtor's obligations to such lenders have been indefeasibly paid in full in cash and completely satisfied in accordance with the pre-petition Loan Documents.

23. The Debtor shall (i) keep proper books, records and accounts in accordance with GAAP in which full, true and correct entries shall be made of all dealings and transactions in relation to its business and activities, (ii) cooperate, consult with, and provide to Lenders all such information as reasonably requested (iii) permit representatives of Lenders to visit and inspect any of their respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtor's business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as often as may reasonably be desired, and (iv) permit representatives of Lenders to consult with the Debtor's management on matters concerning the general status of the Debtors' business, financial condition and operations and the sale thereof.

24. Nothing in the Interim Order will waive any rights of Lenders to request at any time that the Court provide additional or further protection of its interests in the Pre-petition and Post-petition Collateral (including the Cash Collateral), or to seek further or additional adequate protection in the event the adequate protection provided herein proves to be inadequate.

25. The Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order and relating to the application, re-imposition or continuance of the automatic stay of Bankruptcy Code section 362(a), use of Cash Collateral, or other injunctive relief requested.

26. Establishing the date for a Final Hearing to consider the entry of the Final Order approving the relief sought in the Motion.

WHEREFORE, the Debtor prays that the Court grant it the relief set forth herein.

Dated: September 26, 2011

                          THE HENDERSON LAW FIRM

                          _/s/ James H. Henderson_____

                          James H. Henderson
                          State Bar No. 13536
                          1201 Harding Place
                          Charlotte, NC 28204-2826
                          Telephone:   704.333.3444
                          Facsimile:    704.333.5003
                          Email:          henderson@title11.com

# Scotto Restaurant Group LLC
# Profit & Loss
## 2 Week Estimated Budget

**Cost of Goods Sold**
  21 COST OF GOODS SOLD - PURCHASES
    5100 MEAT COST
    5110 PRODUCE COST
    5120 BREAD COST
    5130 SOUP/CHILI COST
    5140 DAIRY COST
    5150 NON-REVENUE COST
    5160 COOKIE/CHIP COST
    5170 BEVERAGE COST
    5300 PAPER COST - FOOD RELATED COST
    5350 MERCHANDISING COST
    5360 PRODUCT WASTE COST
    5370 COUNTER HOT SAUCE COST
**Total Cost of Goods Sold**                                $   57,900.00

**Expenses**
  22 SALARIES & WAGES EXPENSES
    7105 HOURLY WAGES PAID
    7106 SALARY WAGES
  Total 22 SALARIES & WAGES EXPENSES           $   44,688.00

  23 EMPLOYEE BENEFITS
    7205 FICA COMPANY PORTION - HOURLY
    Manager Medical Benefits
    7255 EMPLOYEE MEALS EXPENSE
    7258 MANAGER MEALS EXPENSE
  Total 23 EMPLOYEE BENEFITS                       $   7,747.18

  24 DIRECT OPERATING EXPENSES
    7402 UNIFORMS - HOURLY
    7403 UNIFORMS - MANAGERS
    7404 LAUNDRY AND LINEN
    7410 SMALLWARES
    7418 CLEANING SUPPLIES
    7420 PAPER - NON FOOD RELATED
    7430 LICENSES AND PERMITS
    7450 STORE OFFICE EXPENSE
    7460 REGISTER SUPPLIES
    7470 ROYALTY TO FIREHOUSE OF AMERICA
  Total 24 DIRECT OPERATING EXPENSES           $   12,908.08

  25 MARKETING
    7610 NATIONAL MARKETING EXPENSE
    7620 LOCAL MARKETING EXPENSE
    7626 LOCAL STORE MARKETING
    7627 COUPON REDEMPTION PROGRAM

| | | |
|---|---|---:|
| Total 25 MARKETING | $ | 8,611.79 |
| | | |
| 26 ENERGY & UTILITY SERVICES | | |
|   7705 ELECTRIC UTILITY | | |
|   7710 GAS UTILITY | | |
| Total 26 ENERGY & UTILITY SERVICES | $ | 4,059.00 |
| | | |
| 27 OCCUPANCY COSTS | | |
|   7305 RENT EXPENSE | | |
|   7315 SECURITY | | |
|   7320 EQUIPMENT RENTAL | | |
|   7360 BUSINESS INSURANCE | | |
| Total 27 OCCUPANCY COSTS | $ | 27,563.66 |
| | | |
| 28 ADMINISTRATIVE & GENERAL | | |
|   7820 TELEPHONE EXPENSE | | |
|   7822 DSL/CABLE INTERNET EXPENSE | | |
|   7825 DUES AND SUBSCRIPTIONS | | |
|   7840 CREDIT CARD DISCOUNTS | | |
|   7856 ACCOUNTING EXPENSES | | |
|   7860 BANK SERVICE CHARGES | | |
| Total 28 ADMINISTRATIVE & GENERAL | $ | 7,550.00 |
| | | |
| 29 REPAIRS & MAINTENANCE | | |
|   7900 GENERAL REPAIRS AND MAINT. | | |
|   7994 MAINTENANCE CONTRACTS | | |
|   7998 EQUIPMENT EXPENSE | | |
| Total 29 REPAIRS & MAINTENANCE | $ | 950.00 |
| | | |
| OWNER'S OVERHEAD | | |
|   8205 OWNER'S SALARIES | | |
|   8211 OWNER AND OTHER FICA | | |
|   8230 OWNER TRAVEL AND ENTERTAINMENT | | |
|   8235 OWNER AUTOMBILE EXPENSE | | |
|   8240 OWNER OFFICE EXPENSE | | |
| Total 33 OWNER'S OVERHEAD | $ | 5,015.00 |