UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Bankruptcy Case No, 11-40506 |
| SCOTTO RESTAURANT GROUP, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**RESPONSE IN OPPOSITION TO MOTION TO USE CASH COLLATERAL**

COMES NOW CIT Small Business Lending Corp., ("CIT"), a creditor and party-in-interest in the above styled and numbered bankruptcy case and files this Response in Opposition to Motion to Use Cash Collateral [Doc. No. 16] (the "Motion"), respectfully stating as follows:

## SUMMARY

1.     The Debtor, while apparently recognizing that CIT has valid and perfected security interest in virtually all of its personal property and the proceeds thereof, nevertheless has taken the position that CIT's security interests do not extend to postpetition cash collateral. However, the cash collateral, whether generated prepetition, being generated now, or generated postpetition, and its proceeds, constitute CIT's cash collateral.  The Debtor is prohibited from using CIT's cash collateral without CIT's agreement or the approval of this Court.

2.     In the event that the Court grants the Debtor the right to use CIT's collateral, CIT is entitled to adequate protection payments in addition to the protections the Debtor proposed in the Motion.

## PROCEDURAL BACKGROUND

3.     On August 11, 2011 (the "Petition Date"), a number of petitioning creditors filed an involuntary petition against the Debtor. An order for relief was entered on September 27, 2011.

4.      The Debtor remains in possession of its assets and continues to operate its affairs as a debtor-in-possession.

## FACTUAL BACKGROUND

5.      On or about July 14, 2006, CIT and the Debtor executed that certain US Small Business Administration Note (the "Note").  A true and correct copy of the Note is attached hereto as Exhibit A and incorporated herein.

6.      Pursuant to the Note, CIT extended a secured loan to the Debtor in the original principle amount of $270,400.00.  As of the Petition Date, approximately $197,455.20 of principal and interest and other fees remained due, owing, and unpaid under the Note.

7.      On or about July 14, 2006, CIT and the Debtor executed that certain US Small Business Administration Security Agreement (the "Security Agreement"), a true and correct copy of which is attached hereto as Exhibit B and incorporated herein.  Pursuant to the Security Agreement, the Debtor granted CIT valid security interests in its property in order to secure the Note.

8.      Pursuant to the Security Agreement, the Debtor granted CIT a first priority security interest in virtually all of its personal property, its after-acquired personal property, and the proceeds thereof.

9.      On or about July 14, 2006, CIT filed that certain UCC Financing Statement, a true and correct copy of which is attached hereto as Exhibit C and incorporated herein.  Pursuant to the same, CIT perfected its security interests in and to the Debtor's personal property and the proceeds thereof.

## ARGUMENT

### I.   THE SUBJECT FUNDS ARE CIT'S CASH COLLATERAL.

10.   There can be no question that CIT holds valid, perfected, and unavoidable security interests in and to the cash collateral.

11.   The Bankruptcy Code defines "cash collateral" as:

> cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property . . . whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a) (2007).

12.   As the Debtor generates its income from the sale of food inventory, any cash in the Debtor's possession constitutes CIT's cash collateral as the secured proceeds of CIT's collateral.  As set forth in 11 U.S.C. § 552(b), proceeds can constitute additional cash collateral within the meaning of the Bankruptcy Code:

> if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law.

11 U.S.C. § 552(b)(1) (2007).

13.   CIT has a perfected security interest in the proceeds of its collateral under the terms of the Security Agreement. Such interest in proceeds has been perfected under state law pursuant to N.C. Gen. Stat. § 25-9-315. Accordingly, unless ordered otherwise after a hearing

upon notice, CIT's prepetition, perfected security interests extends to the proceeds of its collateral, whether generated postpetition or prepetition, including the subject cash collateral.

14.      As such, the Debtor "may not use, sell, or lease cash collateral . . . unless -- (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). CIT has not consented to the use of its cash collateral.

## II.      CIT IS ENTITLED TO ADEQUATE PROTECTION

15.      Separately, "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." *Id*. at § 363(e).  If the Court authorizes the Debtor to use any of CIT's cash collateral, the Court should provide sufficient and adequate protection to CIT.

16.      The Debtor has proposed the following forms of adequate protection: (i) the grant of a replacement lien to the same extant as and of equal priority to the lien created by the Security Agreement; (2) the proscription of use of the cash collateral for purposes other than those set forth in Exhibit A to the Interim Order [Doc. No. 26]; and (3) the allowance of CIT and the Debtor's other secured lenders to audit the Debtor's books, etc.

17.      CIT agrees that these provisions are necessary to provide it with any measure of protection. CIT, however, needs additional remedies to be adequately protected.

18.      CIT requests adequate protection payments to offset the depreciation of the Debtor's equipment and other tangible personal property. In this economy the value of the Debtor's equipment and other tangible personal property cannot be ascertained with the certainty required to provide adequate protection. Moreover, the process of liquidating these assets is

costly. The Debtor, therefore, should not be permitted to deplete CIT's liquid collateral while the value of CIT's tangible collateral continues to decrease.

19.    There have been no schedules filed in this Case. Without this information, the exact form of the adequate protection necessary to protect CIT's interests will be difficult to ascertain. If the Debtor is operating at a loss and depleting CIT's cash collateral to do so, no form of adequate protection will be sufficient to compensate CIT for the reduction in the value of its collateral. To this end, CIT requests that any rights the Court grants the Debtor in the use of CIT's cash collateral terminate immediately if the Debtor's cash on hand diminishes by more than ten percent.


WHEREFORE, CIT respectfully requests that the Court enter an order: (i) prohibiting the Debtor from using any of CIT's cash collateral; (ii) alternatively, conditioning the Debtor's usage of any cash collateral on the Debtor providing CIT with adequate protection; and (iii) granting CIT such other and further relief to which it may show itself to be justly entitled.

Respectfully submitted this 7th day of October 2011.


/s/ Clint S. Morse_____
John H. Small
N.C. State Bar No. 8982
Clint S. Morse
N.C. State Bar No. 38384
*Attorneys for LifeStore Bank*

OF COUNSEL:
**BROOKS, PIERCE, MCLENDON,
HUMPHREY & LEONARD, L.L.P.**
Post Office Box 26000
Greensboro, North Carolina  27420
Telephone:  (336) 373-8850

5

## Certificate of Service

I hereby certify that a copy of the foregoing by depositing a copy of the same in the exclusive care and custody of the United States Postal Service, with proper postage thereto affixed to the below listed parties or by electronic means.

Linda Simpson
U.S. Bankruptcy Administrator

James H. Henderson
James H. Henderson, P.C.
1201 Harding Place
Charlotte, NC 28201-2248

Kiah T. Ford, IV
Parker, Poe, Adams & Bernstein, LLP
401 South Tryon Street, Suite 3000
Three Wachovia Center
Charlotte, NC 28202

Katherine Rose Trotter
Parker, Poe, Adams & Bernstein, LLP
401 South Tryon Street, Suite 3000
Three Wachovia Center
Charlotte, NC 28202

A. Cotton Wright
Grier, Furr & Crisp, PA
101 North Tryon Street, Suite 1240
Charlotte, North Carolina

Bradley E. Pearce
Katten Muchin Rosenman LLP
550 South Tryon Street, Suite 2900
Charlotte, NC 28202-4213

W. Chris Parnell
Caudle & Parnell, PLLC
2101 Rexford Road, Suite 165W
Charlotte, North Carolina 28211

This the 7th day of October, 2011.

/s/   Clint S. Morse